IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JOHN DOE 10,

        Plaintiff,

v.

BOARD OF EDUCATION OF TRIAD
COMMUNITY UNIT SCHOOL
DISTRICT 2 AND ERIN GARWOOD,

Defendants.

Case No. 21-cv-83-SPM

# MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

Pending before the Court is a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure filed by Defendant Board of Education of Triad Community Unit School District 2 ("Triad"). For the reasons set forth below, the Court **DENIES** the Motion to Dismiss in its entirety.

## FACTUAL BACKGROUND

The following facts are taken from plaintiff John Doe's ("Doe") amended complaint and are accepted as true for purposes of Triad's motion to dismiss. FED. R. CIV. P. 10(c); *Arnett v. Webster,* 658 F.3d 742, 751-52 (7th Cir. 2011).

Triad Community Unit School District No. 2 is a federally funded education program as required for litigation under Title IX (*Id.*, p. 2). Doe attended multiple schools within the District, including Triad Middle School and Triad High School (*Id.*, p. 3).

During his eighth-grade year, Doe, who is currently 19 years old, allegedly began receiving inappropriate communications from his teacher, co-defendant Erin Garwood ("Garwood") (Doc. 37, pp. 2-3). Garwood first reached out to Doe on Snapchat in the Fall of 2015 and began sending sexually explicit messages toward the end of Doe's eighth grade year in 2016 (*Id.*, p. 3). Garwood told Doe that she considered him "attractive", and she told him about her sexual fantasies including her desire to have sex with him (*Id.*). Garwood also sent Doe a photograph of herself naked in a bathtub (*Id.*).

Following middle school, Doe attended Triad High School (*Id.*, p. 4). Although Garwood was not a teacher at Triad, she was the dance coach, which meant she spent time at the high school (*Id.*, p. 4). When Garwood saw Doe in the hallways of high school, she requested hugs which allegedly made Doe uncomfortable (*Id.*). Garwood continued to contact Doe outside of school and went to his home in the summer of 2017 (*Id.*). Garwood attended Doe's baseball games and watched him from the bleachers (*Id.*). Garwood continued to message Doe that she wanted to have sex with him and continued to send him revealing photographs of herself, all while repeatedly telling him not to report her behavior because it "would ruin her life" (*Id.*).

By the end of Doe's junior year of high school, his classmates gossiped about his "relationship" with Garwood and made jokes about the situation and about her (*Id.*). Doe was accused by his peers of having sex with a teacher and the peers openly laughed about his "relationship" with Garwood (*Id.*, p. 5). Doe claims he was

harassed by other students, specifically as a male student being subjected to sexual acts and/or sexual abuse from a female teacher (*Id.*).

Doe has knowledge that other males were victimized by Garwood (*Id.*). He overheard comments by wrestling teammates, in 2017 and 2018, of male athletes having sex with Garwood (*Id.*). Although Does claims it was well-known amongst his classmates that Garwood had inappropriate interactions with male student-athletes, the school personnel never intervened or told the students that the conduct was sexual abuse and the statements were sexual harassment (*Id.*).

Doe claims the comments, jokes, and harassment was so open, that in or about May of 2019, a teacher reported the rumor about Garwood and Doe to an Administrator (*Id.*). A report of a teacher having sex with underage male students was reported to the school resource officer, Kip Heinle, who pulled Doe out of baseball practice and asked him about Garwood (*Id.*, p. 6). Doe claims he was afraid and overwhelmed when he was confronted, so he lied about anything happening with Garwood (*Id.*). No one explained to Doe that he was not in trouble and that he was a minor who was unable to consent (*Id.*).

Heinle contacted Doe's mother and also placed a hotline call to the Illinois Department of Children's Services to report the abuse (*Id.*). Triad began investigating Garwood, but did not protect Doe from the ongoing rumors and bullying at the school (*Id.*). Doe was harassed by his peers, was embarrassed, and had difficulty focusing on his studies (*Id.*, p. 7).

On May 21, 2019, Doe was interviewed at the Children's Advocacy Center in Wood River, Illinois (*Id*.). During the interview, Doe revealed the inappropriate Snapchat messages and photographs he received from Garwood (*Id*.).

Doe dropped out of all activities and left Triad school at the end of his junior year (*Id.*, p. 10). In May 2019, Doe's mother advised the school that her son would not return due to the hostile environment and sexual harassment (*Id*.).

In June 2019, Triad contacted Doe's mother and asked if she and Doe would come to school for the internal investigation into the allegations against Garwood (*Id*.). The investigation revealed additional victims (*Id.*, p. 11). Garwood was not terminated; she resigned from Triad (*Id*.).

Doe enrolled at Lebanon High School in 2019, and has since graduated (*Id.*, p. 12). On December 5, 2019, Garwood was criminally charged in Madison County, Illinois with the felony offenses of solicitation of a child and grooming (*Id.*, p. 12).

## PROCEDURAL HISTORY

On January 23, 2021, Doe filed his complaint in this Court, against Triad, Garwood, and Rodney Winslow, who was the principal at Triad High School (Doc. 1). On March 17, 2021, Triad and Winslow filed a motion to dismiss (Doc. 27). On March 19, 2021, Garwood filed a motion to stay during the pendency of the criminal prosecution (Docs. 28-29); however, on March 29, 2021, the motion to stay was denied (Doc. 34).

On April 7, 2021, Doe filed an amended complaint against Triad and Garwood, with counts I-V asserted against Triad under Title IX, count VI

asserted against Garwood under 42 U.S.C. § 1983, and count VII asserted against both Triad and Garwood under the Illinois Human Rights Act codified at 775 ILCS 5/1-101, *et seq.* (Doc. 37). Specifically, the counts break down against Triad as follows: (I) Deliberate Indifference to Actual Notice of Prior Sexual Harassment by Garwood Leading to Sexual Harassment of Doe; (II) Official Policy Created by Pattern and Practice of Deliberate Indifference to Sexual Harassment within the District that Created a Heightened Risk; (III) Deliberate Indifference to Sexual Harassment by Peers; (IV) Deliberate Indifference to a Hostile Environment; (V) Failure to Accommodate; and (VII) Illinois Human Rights Act (*Id.*). In light of the filing of the amended complaint, the previously filed motion to dismiss complaint was terminated as moot (Doc. 40).

On May 7, 2021, Garwood answered the amended complaint (Doc. 41). On that same date, Triad filed its motion to dismiss, along with supporting memorandum of law (Docs. 42-43). Within its motion, Triad asserts two main arguments: (1) that Doe has not and cannot plead a valid claim under Title IX; and, (2) that Doe cannot seek relief under the Illinois Human Rights Act (Doc. 43).

On July 9, 2021, Doe filed his response to motion to dismiss, arguing that Triad applied the incorrect standard in its motion and that he sufficient pled sufficient facts in his amended complaint to support claims under Title IX (Doc. 46). Doe further argues that he stated a cause of action under the Illinois Human Rights Act and complied with all prerequisites (*Id*).

On July 23, 2021, Triad filed its reply to Doe's response (Doc. 47).

## LEGAL STANDARD

In addressing a motion to dismiss for failure to state a claim on which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court must assess whether the complaint includes "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, (2007)). "Plausibility is not a symptom for probability in this context but asks for more than a sheer possibility that a defendant has acted unlawfully." *West Bend Mut. Ins. Co. v. Schumacher,* 844 F.3d 670 (7th Cir. 2016). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although a facially plausible complaint need not give "detailed factual allegations," it must allege facts sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. These requirements ensure that the defendant receives "fair notice of what the ... claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964.

The Court of Appeals for the Seventh Circuit has clarified that courts must approach Rule 12(b)(6) motions by construing the complaint in the light most favorable to the non-moving party, accepting as true all well-pleaded facts alleged,

and drawing all possible inferences in the non-moving party's favor. *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009), cert. denied, 558 U.S. 1148 (2010) (*quoting Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). Under this standard, a plaintiff who seeks to survive a motion to dismiss must "plead some facts that suggest a right of relief that is beyond speculative level." *In re marchFIRST Inc.*, 589 F.3d 901 (7th Cir. 2009). A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is meant to test the sufficiency of the complaint, not to decide the merits of the case. *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012); *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990).

Generally, district courts may not consider material outside of the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civile Procedure. *McCready v. eBay*, 453 F.3d 882, 891 (7th Cir. 2006). There is a narrow exception to this rule; however, that permits documents attached to the motion to dismiss to be considered part of the pleadings if they are referenced in the plaintiff's complaint and are central to the plaintiff's claim. *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998).

## DISCUSSION

### I. Title XI

#### A. Law

Title IX of the Education Amendments of 1982 provides in pertinent part that,

> "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be

> subjected to discrimination under any educational program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

In enacting Title IX, Congress sought to prevent federally funded educational institutions from discriminating on the basis of sex. *See Cannon v. University of Chicago,* 441 U.S. 677, 704 (1979). Although the only remedy expressly authorized by the statute is the termination of the recipient's federal funding, 20 U.S.C. § 1682, the Supreme Court has held that Title IX contains an implied private right of action for money damages. *Cannon,* 441 U.S. at 717, *Franklin v. Gwinnett County Pub. Sch.,* 503 U.S. 60, 76 (1992). Title IX's implied right of action allows a student who suffers sexual harassment by a teacher to recover damages from the school district, but only if the school district acts with "deliberate indifference" to the harassment. *Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274, 290 (1998).

Title IX does not allow for vicarious liability, so students who are sexually harassed by school employees can only recover damages against the school district if a school official with "authority to institute corrective measures" had actual knowledge of, and was deliberately indifferent to, the harassment. *Doe v. St. Francis Sch. Dist.*, 694 F.3d 869, 871 (7th Cir. 2012). A Title IX plaintiff must also adequately allege that: (1) the educational institution received federal funding; (2) the harassment was based on sex; and (3) the harassment was so pervasive or severe that it altered the conditions of the plaintiff's education or deprived the plaintiff of access to educational opportunities or benefits provided by the school. *See Doe*, 2020 WL 1445638, at *2 (citing *Mary M. v. N. Lawrence Cmty. Sch.

*Corp.*, 131 F.3d 1220, 1228 (7th Cir. 1997)).

According to the Supreme Court, a private damages action may also lie against a school board under Title IX for sufficiently severe cases of student on student harassment. *Davis Next Friend LaShonda D. v. Monroe County Bd. Of Educ.*, 526 U.S. 629, 639 (1999). To establish a Title IX discrimination claim arising from student-on-student sexual assault or harassment, a plaintiff must allege: (1) that the school exercised substantial control over both the harasser and the context in which the known harassment occurs; (2) the plaintiff must have suffered harassment that is so severe, pervasive, and objectively offensive that it can be said to deprive them of access to the educational opportunities or benefits provided by the school; (3) the school must have had actual knowledge of the harassment; (4) the school must have acted with deliberate indifference to the harassment; and (5) the school's deliberate indifference must have caused the plaintiff to undergo harassment or make that student vulnerable to it. *See, e.g.*, *Davis*, 526 U.S. at 644–45.

### B. ANALYSIS

In order to determine if Doe has stated a plausible cause of action under Title IX, it is necessary to go through the elements. It is uncontroverted that Triad received federal funds. It is also uncontroverted that Doe is a male and Garwood is a female so any harassment was based upon Doe's sex. As for whether the harassment was so pervasive or severe that it altered the conditions of the Doe's education or deprived him of access to educational opportunities or benefits

provided by Triad, Doe claims that he quit extracurricular activities and dropped out of Triad due to the harassment (Doc. 27, pp. 11-12). While it is subjective as to how Doe felt, there is an objective component in that he left Triad and completed his education at Lebanon (*Id.*).

Actual notice by Triad is another essential element under Title IX. The "actual notice" requirement of a Title IX claim necessitates the plaintiff proving "actual knowledge of misconduct, not just actual knowledge of risk of misconduct" *Doe v. St. Francis Sch. Dist.,* 694 F.3d 869, 871 (7th Cir. 2012). However, "a district need not possess actual knowledge of a teacher's acts directed at a *particular plaintiff*, but it must still have actual knowledge of misconduct that would create risks 'so great that they are almost certain to materialize if nothing is done.' " *Hansen v. Board of Trustees,* 551 F.3d 599, 605 (7th Cir. 2008). In other words, "if a teacher had been known to be a 'serial harasser', a district might have actual notice", which is determined "by focusing on reports or observations in the record of inappropriate behavior." *Hansen,* 551 F.3d at 599; *Gabrielle M. v. Park Forest-Chicago Heights, IL Sch. Dist. 163,* 315 F.3d 817, 823 (7th Cir. 2003).

Doe alleges that the school had actual knowledge and was on notice of Garwood's conduct, both in the present case and from prior instances of inappropriate behavior (Doc. 37, pp. 5-9). In an effort to deny they had actual notice, Triad provided email responses involving Garwood that were dated March and April of 2015 (Docs. 43-3, 43-4). Triad also argued that they acted as soon as they heard rumors of Doe's harassment by Garwood and asserted that Doe's lies worked

to his disadvantage (Doc. 43, p. 9). Questions exist about what the school know about Garwood and any student, and when they learned it, but to definitively answer either question at this stage would be premature.

Doe must also assert deliberate indifference when stating a claim under Title IX. The standard of deliberate indifference is a high bar to overcome, but it is usually a determination to be made by the trier of fact. *See Davis,* 526 U.S. 629. There is no universal response.

Triad argues that Doe has asserted duplicative and/or alternative theories of recovery; however, this is allowed at the pleading stage where the potential for overlapping remedies is not a basis for dismissal. Indeed, a plaintiff can initially seek relief a number of ways. *See Reed v. Southern Illinois University,* 2020 WL 3077186 (S.D. Ill. June 10, 2020).Indeed, multiple theories of relief and different conduct can give rise to Title IX claims in a variety of situations a party may state as many separate claims or defenses as it has, regardless of consistency. FED. R. CIV. P. 8(d)(3).

Doe is at the pleading stage, not the proving stage. In considering a motion to dismiss, the court is not deciding the issue of "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974) *overruled on other grounds by Davis v. Scherer,* 468 U.S. 183 (1984). While Doe ultimately has the burden of proving each element, at this stage, he has done enough.

In light of the foregoing, at this time and without the benefit of a fully

developed evidentiary record, the Court is not prepared to determine whether Doe will prevail. For now, Doe has sufficiently pled multiple causes of action against Triad and has plausibly alleged that he is entitled to relief. Because the purpose of a Rule 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve the case on the merits, any disputed issues may be better suited for disposition on a motion for summary judgment, after the case has been more fully developed through discovery.

## II.    Illinois Human Rights Act

### A. Law

In addition to the various counts under Title IX, Doe also alleges that Triad (and Garwood) committed a civil rights violation, in violation of 775 ILCS 5/5A-102(B), when it failed to take appropriate disciplinary action against a representative of an institution of elementary, secondary, or higher education when it knew that its representative (Garwood) was engaging in sexual harassment at school (Doc. 37, pp. 19-20). According to 775 ILCS 5/1-102(B), entitled "Freedom from Sexual Harassment – Employment and Elementary, Secondary, and Higher Education, It is the public policy of this State: "To prevent sexual harassment in employment and sexual harassment in elementary, secondary, and higher education."

Triad makes several arguments as to why this Count should be dismissed. First, Triad contends that Doe has not complied with the Act. Second, Triad contends that Doe's charge of discrimination under the IHRA was untimely. Third,

Triad contends that Doe has not pleaded that Triad had knowledge as required under the Act.

A party's failure to exhaust administrative remedies is an affirmative defense. *Salas v. Wis. Dep't of Corr.,* 493 F.3d 913, 921–22 (7th Cir.2007). Consequently, "[a] complaint may not be dismissed for merely failing to rebut an affirmative defense; 'dismissal is only appropriate if a plaintiff pleads herself out of court by alleging facts that affirmatively establish the defense." *Hucko–Haas v. Bd. of Trs.,* 2008 WL 538909 (N.D.Ill. Feb. 22, 2008).

In the present case, Doe has not effectively "plead[ed] himself out of court." To the contrary, he has provided sufficient allegations to establish at the Rule 12(b)(6) stage that he fulfilled the preconditions to filing a civil action. Doe filed a charge with the Illinois Department of Human Rights and EEOC on March 13, 2020 – because he was a minor when the alleged harassment occurred, the statute of limitations, in this case the 300 days, did not begin to run until Doe's eighteenth (18) birthday – which was within the timeframe (Doc. 46-1). *See* 735 ILCS 5/13-211(a), Minors and persons under legal disability (*tolling limitations period 2 years after the person attains the age of 18 years*). Doe filed this lawsuit on January 21, 2021, after receiving a Notice of Dismissal for Lack of Jurisdiction, which gave him the option to commence a civil action within ninety (90) days of January 26, 2021 (Doc. 46-2). Finally, Triad had knowledge of this claim. In fact, Triad spoke with Doe and Doe's mother in the summer of 2019 prior to this lawsuit, so cannot argue it did not have notice of any potential claim.

## CONCLUSION

For the above-stated reasons, the Court concludes that Doe has stated claim sufficient to survive the instant motion to dismiss. As such, the Motion to Dismiss pursuant to Rule 12(b)(6) filed by the Board of Education of Triad Community Unit School District 2 is **DENIED**. Triad is further ordered to answer the Complaint on or before October 7, 2021.

**IT IS SO ORDERED.**

**DATED: September 7, 2021**

/s/ Stephen P. McGlynn
**STEPHEN P. McGLYNN**
**U.S. District Judge**